IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| BACHIR DEBBA, | ) | 8:08CV304 |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM |
| GERARD HEINAUER, Director, | ) | AND ORDER |
| Nebraska Service Center, MICHAEL | ) | |
| B. MUKASEY, Attorney General of | ) | |
| the United States, and JONATHAN | ) | |
| SCHARFEN, Acting Director, U.S. | ) | |
| Citizenship and Immigration | ) | |
| Services, | ) | |
| | ) | |
| Respondents. | ) | |

This matter is before the Court on Respondents' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Filing No. 14), pursuant to Fed. R. Civ. Pro. 12(b)(1) and 56, and Petitioner's Motion for Oral Argument (Filing No. 25). The Court concludes that Respondents' Motion to Dismiss should be denied; Respondents' Motion for Summary Judgment should be granted; Petitioner's Motion for Oral Argument should be denied; and Petitioner's mandamus action should be dismissed, with prejudice.

**PROCEDURAL BACKGROUND**

The Petitioner, Dr. Bachir Debba, is a native of Algeria who entered the United States on February 2, 1996. (Filing No. 1 at ¶ 10). Respondents are Gerard Heinauer, Director of the Nebraska Service Center ("NSC"), a division of the U.S. Citizenship and Immigration Service ("USCIS"); Michael B. Mukasey, Attorney General of the United States, and Jonathan Scharfen, Acting Director of USCIS.

Within one year of his arrival in the United States, Dr. Debba requested political asylum and, on January 13, 1999, an Immigration Judge granted that request. (Filing No.

19, Exh. 1). On February 8, 2000, Dr. Debba filed an I-485 form, "Application to Register Permanent Resident or Adjust Status," with the NSC pursuant to the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.* (Filing No. 19, Exh. 2). On December 28, 2005, the NSC wrote to Dr. Debba regarding his application and indicated that his case had been selected for detailed review and would take longer than normal for processing. (Filing No. 15, Exh. 1).

Respondents indicate that they have evidence Dr. Debba provided medical care to members of a Tier III terrorist group. (Filing No. 15, Exh. B at 11). Normally, past involvement with a Tier III terrorist group would result in immediate denial of an I-485 application. *See* 8 U.S.C. §1182(d)(3)(B)(i). According to Respondents, their authority to exempt Dr. Debba from such denial began on December 26, 2007, with the Consolidated Appropriations Act of 2008 (CAA). *See* Pub. L. 110-161, 121 Stat. 1844 (codified at INA § 212(d)(3)(B)(i), 8 U.S.C. § 1182(d)(3)(B)(i)). Respondents contend that the passage of the CAA has led to a delay in the processing of Dr. Debba's application, because the Respondents are attempting to determine whether he qualifies for a waiver under § 1182(d)(3)(B)(i). If the Respondents were required to act upon Dr. Debba's application without additional investigation of his alleged involvement with terrorist organizations, Respondents state that they would deny his application.

On July 14, 2008, Dr. Debba filed a mandamus action alleging that Respondents willfully and unreasonably delayed processing his application for adjustment of status. (Filing No. 1). Respondents filed their initial answer on October 15, 2008. (Filing No. 11). On November 26, 2008, Respondents filed their Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. (Filing No. 14). In the Motion, Respondents allege that

this Court must dismiss Dr. Debba's action because the Court does not have subject matter jurisdiction over the case or controversy. In the alternative, Respondents argue for summary judgment.

## STANDARD OF REVIEW

"It is a fundamental precept that federal courts are courts of limited jurisdiction." *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). Any party may challenge the Court's subject matter jurisdiction, and a motion pursuant to Fed. R. Civ. P. 12(b)(1) is the proper vehicle. *See Osborn v. United States*, 918 F.2d 724, 730 (8th Cir. 1990) ("[A]t issue in a factual 12(b)(1) motion is the trial court's jurisdiction - its very power to hear the case"). The party asserting jurisdiction, here the Petitioner, has the burden of proving that jurisdiction is proper. *VS Ltd. P'ship v. Dep't of Hous. and Urban Dev.*, 235 F.3d 1109, 1112 (8th Cir. 2000) (citation omitted)("The burden of proving subject matter jurisdiction falls on the plaintiff."). Dismissal "will not be granted lightly[,]" *Wheeler v. St. Louis Sw. Ry. Co.*, 90 F.3d 327, 329 (8th Cir. 1996), and "[t]he district court has the authority to consider matters outside the pleadings on a motion challenging subject matter jurisdiction under 12(b)(1)." *Drevlow v. Lutheran Church, Mo. Synod*, 991 F.2d 468, 470 (8th Cir. 1993). "[T]he existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Osborn*, 918 F.2d at 730.

Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56(c); *Cordry v. Vanderbilt Mortg. & Fin., Inc.*, 445 F.3d 1106, 1109-1110 (8th Cir. 2006) (citing *Bockelman v. MCI Worldcom, Inc.*, 403 F.3d 528, 531 (8th Cir. 2005)). The proponent of a motion for

summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. Pro. 56(c)).  The proponent need not, however, negate the opponent's claims or defenses.  *Id.* at 324–25.

In response to the proponent's showing, the opponent's burden is to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. Pro. 56(e)).  A "genuine" issue of material fact is more than "some metaphysical doubt as to the material facts."  *Id.* at 586.

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  "If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted."  *Id.* at 249–50 (citations omitted).  Summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'"  *Celotex Corp.*, 477 U.S. at 327 (quoting Fed. R. Civ. Pro. 1).

## ANALYSIS

**Respondents' Motion to Dismiss for Lack of Subject Matter Jurisdiction**

Respondents contend that this Court does not have subject matter jurisdiction to hear Dr. Debba's mandamus action because INA § 242(g), 8 U.S.C. § 1252(g), bars judicial review of the Respondents' actions.  Section 1252(g) states:

4

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, United States Code, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

Respondents argue that because the Attorney General is "adjudicating" Dr. Debba's application to adjust his status to that of a permanent resident, §1252(g) precludes the Court from reviewing the Attorney General's actions.

In *Reno v. American-Arab Anti-Discrimination Committee*, the Supreme Court held that § 1252(g) applied to "three discrete events along the road to deportation." 525 U.S. 471, 483 (1999)("The provision applies only to three discrete actions that the Attorney General may take: her 'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders.'" *Id.* at 482)(citing 8 U.S.C. § 1252(g))).

The Supreme Court observed that it was "implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings," and this Court finds it even more implausible that the language in §1252(g) referring to deportation proceedings constitutes Congress's shorthand referral to the Attorney General's actions taken pursuant to the adjudication of an application for adjustment of status pursuant to 8 U.S.C. §1255.  *Id.* at 482.  Other courts have arrived at the same conclusion. *See Paunescu v. I.N.S.*, 76 F.Supp.2d 896, 899 (N.D. Ill. 1999)("Because this case does not involve any of the 'specific steps in the deportation process,' or any aspect of the deportation process at all, § 1252(g) does not apply.")(quoting *Reno*, 525 U.S. at 485, n. 9)).

5

Respondents argue that if §1252(g) does not divest this Court of subject matter jurisdiction, §1252(a)(2)(B)(ii) does.  Section 1252(a)(2)(B)(ii) states:

> (B) Notwithstanding any other provision of law . . . no court shall have jurisdiction to review – . . . (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title [asylum relief].

Because § 1252 concerns orders of removal, this Court does not interpret §1252(a)(2)(B)(ii) as limiting judicial review of any of the Attorney General's duties under the INA *except* those involving orders of removal.  Dr. Debba's case does not involve an order of removal, but a delay in the review of his application for adjustment of status.

**Respondents' Motion for Summary Judgment**

In the alternative, Respondents move for summary judgment, suggesting that no genuine issue of material fact exists.   Dr. Debba responds that a dispute over a genuine issue of material fact does exist; specifically, he disputes Respondents' contention that his record indicates he provided material support to a Tier III terrorist group through his alleged provision of medical care to terrorists.   The Court finds this factual dispute immaterial to the issues presented in the pending motions.  The INA, in § 1255, provides no deadline by which the Attorney General must complete his review of an application for adjustment status.  With no specific deadline in the statute, Congress has left to the Attorney General's administrative discretion the time in which he will complete his review of such applications.  This Court is not at liberty to construct and impose its own deadline.

Pursuant to § 706(1) of the Administrative Procedure Act ("APA"), Dr. Debba has asked this Court to "compel agency action unlawfully withheld or unreasonably delayed."

5 U.S.C. 706(1). The Supreme Court has held, however, that "the only agency action that can be compelled under the APA is action legally required. . . Thus, a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 63-64 (2004). In the present case, there is no "discrete agency action" that the Attorney General was required to take, and has failed to take.

When an agency is compelled by law to act, but the "manner of its action is left to the agency's discretion, a court can compel the agency to act, but has no power to specify what the action must be." *Id.* at 65. Notably, INA §1255(a) provides in part:

> The status of an alien who was inspected and admitted or paroled into the United States . . . *may be adjusted* by the Attorney General, *in his discretion and under such regulations as he may prescribe*, to that of an alien lawfully admitted for permanent residence . . . .

(emphasis added). Section 1255 arguably compels the Attorney General to review Dr. Debba's application for adjustment of his status, and the record indicates that the Attorney General has given Dr. Debba's application considerable attention. (*See* Filing Nos. 15 & 16). Dr. Debba argues, however, that the Attorney General has failed to complete his review of the application with a "reasonable" time.

The Supreme Court's holding in *Norton v. Southern Utah Wilderness Alliance* dictates that while this Court may compel the Attorney General to review an application pursuant to §1255, this Court may not dictate the manner in which the Attorney General will conduct his review. Section 1255 leaves the manner of review of applications to "his discretion and under such regulations as he may prescribe." 8 U.S.C. § 1255(a). Consequently, this Court will refrain from imposing its own judicially constructed deadline.

7

## CONCLUSION

The Court denies Respondents' Motion to Dismiss; grants their Motion for Summary Judgment; denies Dr. Debba's Motion for Oral Argument; and dismisses his claims, with prejudice.

IT IS ORDERED:

1. Respondents' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Filing No. 14), is granted in part:

    (a) The Motion to Dismiss is denied; and

    (b) The Motion for Summary Judgment is granted;

2. Petitioner's Motion for Oral Argument (Filing No. 25) is denied;

3. Petitioner's claims are dismissed with prejudice; and

4. A separate Judgment will be entered.

DATED this 20th day of January, 2009.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge